UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

MEBA PENSION TRUST, et al.       *

                                  *

    Plaintiffs
                                  *
v.
                                  *   Civil No.:  L03 CV 158

NIKKI SUMMERVILLE, et al.         *

                                  *
    Defendants
                                  *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S
### MOTION FOR SUMMARY JUDGMENT

This is an interpleader action filed by MEBA Pension Trust ["MEBA"] pursuant to Fed. R. Civ. P. 22 against Nikki Summerville ["Plaintiff"] and Janet Summerville ["Defendant"]. Daniel Summerville, a participant in MEBA's employee benefit plan, was vested in a MEBA Money Purchase Benefit ["MPB"] individual contribution account, to which Plaintiff and Defendant are competing claimants. (Complaint ¶¶ 10, 13)  Jurisdiction over this claim is predicated on the Employee Retirement Income Security Act of 1974 ["ERISA"], 29 U.S.C. §§ 1132 (e)(1) and (f), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.  (Complaint ¶ 2)

### PROCEDURAL HISTORY

After the death of Daniel Summerville on April 10, 2002, Plaintiff received a letter dated April 30, 2002 from MEBA indicating that she was the beneficiary of Daniel Summerville's MPB (*Exhibit 1*).  On or about June 11, 2002, Plaintiff received another letter from MEBA

stating that she was not the beneficiary of the MPB. (*Exhibit 2*) Plaintiff drafted a letter to MEBA on June 19, 2002 requesting reconsideration. (*Exhibit 3*) Defendant drafted a letter to MEBA on or about June 21, 2002 explaining her plans for distribution of the MPB. (*Exhibit 4*) Over two months later, MEBA mailed letters to Plaintiff and Defendant dated September 12, 2002 notifying them that Plaintiff's request would be considered an appeal and heard at the October meeting of the Board of Trustees. (*Exhibits 5 & 6*) On January 17, 2003, MEBA filed this interpleader action requesting that the Court determine the rightful beneficiary of Daniel Summerville's MPB. (Complaint p. 8, ¶ 3) MEBA deposited the funds in the MPB with the Court pursuant to this Court's Order dated April 15, 2003. The parties agreed that Nikki Summerville would be renamed Plaintiff and Janet Summerville, Defendant, and this Court issued a Scheduling Order dated May 29, 2003 stating that the parties shall simultaneously file cross-motions for summary judgment.

## STATEMENT OF FACTS

Daniel Summerville worked as an engineer and merchant seaman and obtained the MPB at issue through MEBA. (*Exhibit 7*—Affidavit of Patti Summerville, ¶ 11, Complaint ¶ 10) He designated Defendant as the beneficiary on October 25, 1986. (*Exhibit 8*) Daniel Summerville obtained a change of beneficiary form for the MPB. (*Exhibit 9*)

In September 2000, Daniel Summerville was visiting Plaintiff, his daughter, and her son, at her home in Arkansas. (*Exhibit 10* -- Affidavit of Nikki Summerville, ¶ 7) He completed the change of beneficiary form, told Plaintiff to sign the form and it was notarized on September 21, 2000. (*Id* at ¶¶ 11, 12) MEBA received the completed change of beneficiary form on September 26, 2000. (*Exhibit 9*)

2

At that time, Daniel Summerville expressed his happiness in changing the beneficiary from Defendant to Plaintiff because of his desire to "make things right" with Plaintiff and to provide for her and her children.[1] (*Exhibit 7*—Affidavit of Patti Summerville, ¶ 16 & *Exhibit 11*—Affidavit of Peggy Pot, ¶¶ 8, 10) Daniel Summerville also expressed his intentions of helping to send his grandchildren to college by leaving the MPB to Plaintiff. (*Exhibit 7*—Affidavit of Patti Summerville, ¶ 23)

Daniel Summerville was injured in a car accident in Hawaii in 1999, was unable to work and lived with his mother, Angelina Summerville, in her home in San Francisco, California. (*Exhibit 7*—Affidavit of Patti Summerville, ¶¶ 12,13) Defendant and Daniel Summerville were the only two children of Angelina Summerville. (*Id* at ¶ 14) Defendant and Daniel Summerville had a strained relationship and often disagreed on how to care for their mother. (*Id* at ¶¶ 19, 20) At some point, Defendant petitioned to have Angelina Summerville declared incompetent and attempted to have Daniel Summerville physically removed from the home. (*Id* at ¶ 19) Shortly thereafter, on April 10, 2002, Daniel Summerville died (*Exhibit 12*—Death Certificate dated May 8, 2002).

Plaintiff received a letter from MEBA dated April 30, 2002 notifying her that she was the named beneficiary of her father's MPB. (*Exhibit 1 & Exhibit 10*—Affidavit of Nikki Summerville, ¶ 15) On or about June 11, 2002, Plaintiff received another letter from MEBA stating that she was not the beneficiary of the MPB. (*Exhibit 2*) The letter stated that Daniel Summerville did not sign the change of beneficiary form, rendering the document invalid. (*Id.*)

---

[1] Daniel Summerville's statements are admissible pursuant to F.R.E. 803(3) as evidence of Mr. Summerville's then existing state of mind, specifically his intent. *See Phoenix Mutual Life Ins. Co. v. Adams*, 30 F. 3d 554, 566 (4th Cir. 1994) (holding that decedent's statements to his wife regarding his intentions of changing his beneficiary were admissible under F.R.E. 803(3) as evidence of the decedent's then existing state of mind).

Plaintiff drafted a letter to MEBA on June 19, 2002 requesting reconsideration. (*Exhibit 3*) Plaintiff explained that the change of beneficiary form did not include instructions, that her father instructed her to sign the line labeled "Beneficiary," and that MEBA neglected to review the form when it was received. (*Id.*)

On or about June 21, 2002, Defendant drafted a letter to MEBA. (*Exhibit 4*) Defendant stated that she wished to distribute the MPB in the same manner as described in Daniel Summerville's will, equally divided between his children. (*Id.*) Daniel Summerville was the father of two children, Plaintiff and her half-brother, Danny Deane. (*Exhibit 10*—Affidavit of Nikki Summerville, ¶ 10) Daniel Summerville consented to give up his custody rights of Danny Deane so that he could be adopted by his step-father. (*Id. & Exhibit 13*—Adoption Petition dated January 10, 1989). Defendant was named executor of Daniel Summerville's estate, but relinquished that responsibility in writing on or about April 17, 2002. (*Exhibit 7*—Affidavit of Patti Summerville, ¶ 21 & *Exhibit 14*—Defendant's Waiver dated April 17, 2002)

## LAW AND ARGUMENT

There is no genuine issue of material fact with respect to the change of beneficiary of the MPB from Defendant to Plaintiff. The facts presented do not reveal one question as to Daniel Summerville's intentions and the rightful beneficiary of the MPB. The facts are undisputed and do not present a genuine issue for trial on the merits.

### *Standards for Summary Judgment*

Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2003 Rev.). Plaintiff, as the moving party, bears the burden of showing that there is no genuine issue of material fact. Defendant must oppose the Motion utilizing evidence as described in Rule 56(e).[2] Should the Defendant fail to meet her burden and not produce specific facts depicting a genuine issue as to any material fact, then summary judgment is appropriate for Plaintiff.[3]

*Applicable Law*

*Substantial Compliance: Federal Common Law*

### A. ERISA Governs Daniel Summerville's MPB

The parties do not dispute that Daniel Summerville's MPB is governed by ERISA.[4] (Defendant Janet Summerville's Answer to Complaint for Interpleader ¶ 4) "In enacting ERISA, Congress established a comprehensive statutory scheme to govern employee benefit plans."[5] Within ERISA, Congress set out three provisions relating to the pre-emptive effect of the federal legislation, summarized by the Supreme Court in *Pilot Life Ins. v. Dedeaux*:

> If a state law relate[s] to . . . employee benefit plan[s], it is pre-empted. § 514(a). The saving clause excepts from the pre-emption clause laws that regulate insurance. § 514(b)(2)(A). The deemer clause makes clear that a state law that purports to regulate insurance cannot deem an employee benefit plan to be an insurance company. § 514(b)(2)(B)[6]

---

[2] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324; 106 S. Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505 (1986); *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986).
[3] *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 249-250.
[4] "[MEBA Pension Trust] is a multi-employer pension benefit plan within the meaning of ERISA § 3(2), (3), and (37)(A), 29 U.S.C. § 1002(2), (3), and (37)(A)." Plaintiff MEBA's Complaint ¶ 4.
[5] *Singer v. Black & Decker, Corp.*, 964 F. 2d 1449, 1452 (4th Cir. 1992) *citing Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1987).
[6] 481 U.S. 41, 45, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1987).

The issue before the Court is whether Daniel Summerville effectively changed the beneficiary of his ERISA governed MPB. In general, the designation of a beneficiary to an ERISA governed MPB *relates to* an ERISA plan.[7]

### B. ERISA Preempts State Law Regarding Change of Beneficiaries

The Fourth Circuit addressed the question of ERISA's preemption of state law governing a change of beneficiary to an ERISA benefit in *Phoenix Mutual Life Ins. Co. v. Adams*.[8] Similar to the case now before the Court, *Phoenix* was an interpleader action filed to determine the rightful beneficiary of a deceased's ERISA-regulated benefit. The competing claimants were the decedent's widow ["Rosita"] and son ["Jack"]. After depositing the benefit funds with the Court, the insurance company, Phoenix, was dismissed from the action.

In *Phoenix*, the deceased ["Bill"] designated Jack as beneficiary of two life insurance policies and subsequently married Rosita. At some point, Bill acquired a change of beneficiary form and completed it. However, after the language, "changed beneficiary to" the deceased left a blank space.[9] The form was forwarded to an employee, Mr. Holcombe. Bill telephoned Mr. Holcombe to confirm the change of beneficiary. Mr. Holcombe recalled that Bill stated that he wished to make Rosita the beneficiary. Bill died and Mr. Holcombe did not make the change.

After realizing that Bill did not complete the change of beneficiary form, Phoenix notified Jack and suggested that he relinquish any claim to the proceeds or reach an agreement with Rosita concerning division of the benefits.[10] Phoenix also mailed Rosita a copy of the notice. Jack refused to relinquish his rights to the benefits and refused to reach an agreement

---

[7] *Phoenix Mutual Life Ins. Co. v. Adams*, 30 F. 3d 554 (4th Cir. 1994).
[8] 30 F. 3d 554 (4th Cir. 1994).
[9] *Id* at 557.
[10] *Id* at 558.

with Rosita. Finally, Phoenix filed an interpleader action so that the Court could resolve the dispute between Jack and Rosita.

The case arose in the United States District Court for the District of South Carolina. Jurisdiction was based on diversity of citizenship and subject matter jurisdiction based on the ERISA-regulated benefit at issue.[11] Because an ERISA-regulated benefit was involved, the Court was faced with the issues of whether ERISA preempted South Carolina law regarding the change of beneficiary to the ERISA-regulated benefit.

"The Court found that South Carolina's doctrine of substantial compliance *relates to* an ERISA plan under § 1144(a) bringing South Carolina's substantial compliance law within the purview of the preemption provision."[12] Further, the Court held that ERISA's savings clause did not apply because the state's substantial compliance law did not *regulate* insurance within the context of § 1144(b)(2)(A).[13] The Court was left to look to ERISA for guidance in determining whether the change of beneficiary was effectuated.

ERISA does not explicitly address the issue that was presented concerning the incomplete change of beneficiary form, therefore, the Court turned to federal common law.[14]

> Courts may develop such federal common law only where ERISA itself does not expressly address the issue before the court . . . Where the statute is silent, courts must construct a common law that effectuates the policies underlying ERISA. In so doing, they may use state common law as a basis for new federal common law, but only to the extent that state law is not inconsistent with congressional policy concerns.[15]

---

[11] *Phoenix,* 30 F. 3d at 558.
[12] *Id.* at 559.
[13] *Id.*
[14] *Id.*
[15] *Id* citing *Thomason v. Aetna Life Ins. Co.,* 9 F.3d 645, 647 (7th Cir. 1993).

In light of ERISA's preemption of South Carolina's substantial compliance doctrine and the absence of any guidance by ERISA, the Supreme Court and Fourth Circuit have authorized federal courts to develop federal common law concerning ERISA-regulated plans.[16]

In *Phoenix*, the District Court defined substantial compliance under federal common law in order to determine whether Jack was the proper beneficiary of Bill's ERISA-regulated benefits. The District Court's definition of the federal common law doctrine of substantial compliance provides:

> Pursuant to federal common law, an insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy.[17]

Applying this standard, the *Phoenix* Court looked to evidence of Bill's intentions and what steps he took to change the beneficiary to Rosita.

The evidence showed that Bill did intend to change the beneficiary from Jack to Rosita and that he did take steps to give effect to the change of beneficiary. Bill obtained a change of beneficiary form, he filled it out, and returned it to Phoenix. Bill contacted Phoenix to confirm the status of the change of beneficiary and spoke to Mr. Holcombe. At some point, Mr. Holcombe left the company without completing Bill's form, and Bill died. Although Bill did not complete the form, he substantially complied with the requirements. "By definition, substantial compliance is less than actual compliance."[18] The District Court held that Bill met the federal

---

[6] *Id* at 562 *citing Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 103 L. Ed. 2d 80, 109 S. Ct. 948; *Singer v. Black & Decker Corp.*, 964 F. 2d 1449, 1452 (4th Cir. 1992).
[7] *Id* at 564.
[8] *Id* at 565.

common law standard of substantial compliance and effectively changed the beneficiary of his ERISA-regulated benefits to Rosita. The Fourth Circuit affirmed the District Court's decision.[19]

### C. Application of Substantial Compliance

In *Metropolitan Life Ins. Co. v. Hall*,[20] the United States District Court for the District of Maryland addressed the issue of whether a change of beneficiary of an ERISA-regulated plan was effective. Metropolitan Life filed an interpleader action, deposited the funds with the Court, and was dismissed from the case. The remaining parties filed motions for summary judgment.

The decedent expressed her intentions of changing the beneficiary to an ERISA-regulated benefit from her ex-husband to her current husband. Before her death, she completed several documents, but not the form required by the insurance company in order to make the change of beneficiary effective. She did, however, hire an attorney, sign several legal documents, including a general power of attorney, a pourover will, a living trust agreement, and an affidavit of beneficiary designation in front of a notary. After her death, the decedent's ex-husband claimed he was entitled to the ERISA-regulated funds to which he was named beneficiary because the decedent did not complete the requisite form.

The Court applied the Fourth Circuit's holding in *Phoenix* and applied the federal common law doctrine of substantial compliance.[21] The Court held that the decedent did everything in her power to change the beneficiary from her ex-husband to her current husband, stating "[defendant's] argument that [decedent's] change of beneficiary was invalid because she

---

[19] *Id* at 568.
[20] 9 F. Supp. 2d 560 (D. Md. 1998).
[21] "Here, as in *Phoenix Mutual*, the life insurance proceeds at issue derive from an employee benefit plan governed by ERISA; consequently, *Phoenix Mutual* is controlling in this case." *Metropolitan Life Ins. Co. v. Hall*, 9 F. Supp. 2d 560, 563 (D. Md. 1998).

did not comply with the life insurance policy's requirement of completing a new beneficiary designation form is beside the point."[22] Finally, the Court granted the husband's motion for summary judgment holding that there was no genuine dispute of material fact; the decedent substantially complied with the ERISA-regulated plan's requirements to change the beneficiary to her husband.[23]

The Fourth Circuit's ruling in *Phoenix* was applied in *Davis v. Combes* by the United States Court of Appeals for the Seventh Circuit.[24] In *Combs*, the facts are almost identical to those in the case now before the Court. However, in *Combs*, the decedent did not sign the change of beneficiary form at all before she submitted it. The plan accepted the form and entered the change in its files. The discrepancy was not raised until after the insured's death. At that point the original beneficiary and the "new" beneficiary both claimed ownership of the ERISA-regulated fund. The Court stated:

> The fact that a policy holder made a careless error should not conclusively determine whether her efforts at naming a beneficiary were effective for purposes of the policy and the statute. Carelessness suggests lack of attention to detail, but it tells us very little about whether the policy holder formed the necessary intent to name a beneficiary and whether she took sufficient steps consistent with that intent to implement her decision.[25]

Even without the decedent's signature, the Court held that the decedent substantially complied with the plan's requirements and the change of beneficiary was effective.[26]

---

[22] *Id.* at 563.
[23] *Id.* at 565.
[24] 294 F. 3d 931, 940 (7th Cir. 2002).
[25] *Davis v. Combs*, 294 F. 3d 931, 942 (7th Cir. 2002).
[26] *Id.*

The United States District Court for the Southern District of New York applied *Phoenix* in *Connecticut Gen. Life Ins. Co. v. Mitchell*.[27] The decedent took steps to change the beneficiary of his ERISA-regulated benefit similar to those taken by Mr. Summerville. In *Mitchell*, the decedent obtained a change of beneficiary form, filled it out, and mailed it to the insurance company where it was received and filed. Not until after his death did the insurance company notice that the decedent did not sign the form. Applying *Phoenix*, the Court stated:

> Phoenix is sufficiently similar to the instant case so that its discussion of substantial compliance is applicable here. Nothing in the doctrine of substantial compliance restricts it to cases where there is a signature on the form. The doctrine exists to discern the 'real beneficiary' of a given life insurance policy, and by definition, substantial compliance is less than actual compliance.[28]

The Court held that the federal common law doctrine of substantial compliance governed the ERISA-regulated benefit in question and that the change of beneficiary was effective, even without the decedent's signature. Mr. Summerville went one step further than the decedents in *Mitchell* and *Combs* by actually signing his change of beneficiary form in front of a notary public, further evidencing his intent and substantial compliance with the requirements of the change of beneficiary form.

The facts now before the Court clearly show Mr. Summerville's intentions to change his beneficiary from Defendant to Plaintiff. Similar to the circumstances in *Phoenix, Metropolitan Life Ins. Co., Mitchell,* and *Combs*, MEBA filed an interpleader action in order for the court to determine which of the competing claimants is entitled to the decedent's ERISA-regulated benefits. Mr. Summerville expressed his intent to change the beneficiary of the MPB to several

---

[27] No. 94 Civ. 4648 (LAP), 1995 U.S. Dist. LEXIS 11222 (S.D.N.Y. Aug. 8, 1995).
[28] *Id* at *24.

individuals and in writing on the change of beneficiary form. Mr. Summerville completed the form, executed it before a notary, and returned it to MEBA. The form was received by MEBA in 2000 and after Mr. Summerville's death in 2002, MEBA realized that Plaintiff's signature was also on the change of beneficiary form above the word "participant." MEBA did not notify Plaintiff or Mr. Summerville of this discrepancy until after Mr. Summerville's death. This discrepancy does not negate Mr. Summerville's intent nor overcome his substantial compliance. By clearly expressing his intent and taking positive steps to change the beneficiary, Mr. Summerville substantially complied with the requirements of the MEBA change of beneficiary form.

## CONCLUSION

There is no genuine dispute of material fact in this case. The facts surrounding the change of beneficiary are clear and undisputed. Daniel Summerville intended Plaintiff to be the beneficiary of his MPB. He undertook such positive actions as obtaining the change of beneficiary form, completing it to the best of his ability, having it notarized, and sending it to MEBA. He *more than* substantially complied with MEBA's procedure to change the beneficiary and effectively made the change from Defendant to Plaintiff.

JEFFREY A. WOTHERS
Federal Bar No. 09439
CRISTINA A. MILNOR
Federal Bar No. 26973
Niles, Barton & Wilmer, LLP
111 S. Calvert Street
Suite 1400
Baltimore, MD 21202
Telephone (410) 783-6300
Fax (410) 783-6363
**Attorneys for Plaintiff**