Case 1:03-cv-00158-WDQ   Document 20-18   Filed 06/13/2003   Page 1 of 12

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 11222                    Page 1 of 12

Service: Get by LEXSEE®
Citation: 1995 U.S. Dist. LEXIS 11222

*1995 U.S. Dist. LEXIS 11222, ***

CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Plaintiff, -against- PATRICIA A. MITCHELL, As Administratrix of the Estate of DANIEL O'KEEFE, and GREGORY JURDEN LORD, Defendants.

94 Civ. 4648 (LAP)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1995 U.S. Dist. LEXIS 11222

August 7, 1995, Decided
August 8, 1995, FILED

**CORE TERMS:** beneficiary, insured, change of beneficiary, federal common law, designation, state law, doctrine of substantial compliance, endorsement, employee organization, life insurance policy, substantial compliance, insurer, summary judgment, preempted, enrollment, unsigned, preempt, regulation, preemption, employee welfare benefit plan, sponsors, employee benefit, memorandum, administrator, counterclaim, ineffective, signature, brochure, payroll deduction, safe harbor

**COUNSEL:** [*1]

for CONNECTICUT GENERAL LIFE INSURANCE COMPANY, plaintiff: John Ponterio, Office, NY, NY.

For PATRICIA A. MITCHELL, As Administratrix of the Estate of Daniel O'Keefe, defendant: Terese L Arenth, BAER MARKS & UPHAM, New York, NY. For GREGORY JURDEN LORD, defendant: John P. Colangelo, Below Address Terminated on 4/26/95, Law Off John P. Colangelo, This address as of 4/26/95, White Plains, NY.

For PATRICIA A. MITCHELL, counter-claimant: Terese L Arenth, BAER MARKS & UPHAM, New York, NY. For GREGORY JURDEN LORD, counter-claimant: John P. Colangelo, Below Address Terminated on 4/26/95, Law Off John P. Colangelo, This address as of 4/26/95, White Plains, NY.

For CONNECTICUT GENERAL LIFE INSURANCE COMPANY, counter-defendant: John Ponterio, Office, NY, NY.

**JUDGES:** Loretta A. Preska, U.S.D.J.

**OPINIONBY:** Loretta A. Preska

**OPINION: MEMORANDUM AND ORDER**

LORETTA A. PRESKA, United States District Judge:

This is an interpleader action by plaintiff Connecticut General Life Insurance Company ("CGLI") to determine the rightful beneficiaries to payment on Connecticut General Life Insurance Policy No. 02M101990. The policy became payable on the death of insured Daniel O'Keefe ("O'Keefe"). Defendants in this action are O'Keefe's mother, Patricia Mitchell

Case 1:03-cv-00158-WDQ    Document 20-18    Filed 06/13/2003    Page 2 of 12

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 11222                                Page 2 of 12

("Mitchell"), the administrator of O'Keefe's estate, and O'Keefe's friend Gregory Jurden Lord ("Lord"). Each claims a right to full payment under the policy.

Plaintiff filed the original complaint on June 24, 1994. Defendant Mitchell answered and asserted counterclaims on August 25, 1994; defendant Lord answered and asserted counterclaims on September 6, 1994. On October 3, 1994, CGLI moved to dismiss the defendants' counterclaims and for discharge in interpleader. Mitchell moved for summary judgment on November 3, 1994; Lord opposed this motion and cross-moved for summary judgment on November 21, 1994. In a Stipulation and Order dated December 8, 1994, CGLI withdrew its motion to dismiss, and each [*2] defendant was granted the right to file an amended counterclaim within 30 days of this Court's order deciding the pending summary judgment motions. For the following reasons, defendants' motions for summary judgment are denied, and, pursuant to the December 8, 1994 Stipulation and Order, Mitchell and Lord have 30 days from the date of this order to file amended counterclaims against CGLI.

## BACKGROUND

O'Keefe, the deceased, was the owner of a $150,000.00 life insurance policy issued by CGLI. This policy was offered to O'Keefe through his employer, the law firm of Orrick, Herrington & Sutcliffe ("OH&S"). The policy first took effect on or about April 10, 1991, when O'Keefe submitted a signed and dated "Enrollment and Waiver Form" that designated "estate" as his beneficiary. O'Keefe's mother, Patricia Mitchell, a defendant here, is Administratrix of O'Keefe's estate. She claims that the designation of "estate" as beneficiary on O'Keefe's original enrollment and waiver form controls payment of the benefits, and, therefore, that the estate is entitled to the proceeds of the policy.

Defendant Lord is described in his moving papers as an "intimate friend" of O'Keefe. (Memorandum [*3] in Response to Mitchell's Motion to Summary Judgment and In Support of Cross-Motion for Summary Judgment at 2.) Lord alleges, and affidavits of O'Keefe's co-workers similarly assert, that O'Keefe promised to change the beneficiary designation on this policy to Lord. Factors allegedly influencing this decision were the nature of his close relationship with Lord, their joint purchase of a condominium (the mortgage for which was co-signed by Lord) and O'Keefe's health (McDonough Aff. PP 1-4; Shackleford Aff. P 5; Lord Aff. PP 9, 10, 13.) Faced with a terminal illness, O'Keefe telephoned CGLI on or about September 8, 1993 and asked to change the beneficiary on his life insurance policy. On the same day, a CGLI representative sent O'Keefe CGLI's standard "Request for Change of Beneficiary Form." (Lord Aff. P 14.) Lord alleges that O'Keefe in his own hand wrote his name and the date on the form, and, in the "new beneficiary section," wrote the name and address of Gregory Jurden Lord. (Meub Aff. PP 4-5; Lord Aff. PP 20, 21.) Although the form had an area marked for signature, O'Keefe nowhere signed his name in cursive on the form. O'Keefe apparently mailed this form to CGLI in late September, [*4] 1993. CGLI internal records acknowledge receipt and certification of the form on or about September 27, 1993. In fact, the form was apparently signed and dated by CGLI employee Linda O'Donnell in the section titled "CIGNA certifies the change has been recorded." (Arenth Aff. Exh. B.) Although no confirmation letter has been produced by the parties, Lord alleges, and CGLI documents seem to confirm, that upon its receipt of O'Keefe's change of beneficiary form, CGLI mailed O'Keefe a letter confirming that the change had been made. n1 (Shackleford Aff. P 6.) Lord asserts that CGLI never alerted O'Keefe that his form was unsigned or that his attempted change was ineffective. O'Keefe died on October 16, 1994.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n1 Although (a) the policy indicates that such action was standard operating procedure, (b) internal correspondence indicates that a letter was sent, and (c) Lord alleges that O'Keefe received the letter, no party has produced evidence that the letter in fact was sent. Lord alleges that the letter became the property of the estate upon O'Keefe's death and should be

Case 1:03-cv-00158-WDQ   Document 20-18   Filed 06/13/2003   Page 3 of 12

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 11222                    Page 3 of 12

in the estate's possession.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - [*5]

CGLI was notified of O'Keefe's death by O'Keefe's co-worker, Ruth Shackleford. (Shackleford Aff. P 11.) CGLI promptly sent a letter and claim form to Lord, presumably because its records indicated that Lord was beneficiary on the policy. Lord submitted a claim form on November 7, 1993. (Lord Aff. P 15.) After failing to receive a response from CGLI for a significant time, Lord contacted CGLI to inquire as to the status of his claim. It was at this time that CGLI informed Lord that the form was unsigned and that processing would be delayed. (Lord Aff. PP 16-19.) Facing competing claims to the same insurance policy, CGLI brought the instant interpleader action.

## DISCUSSION

### I. WHAT LAW GOVERNS?

Mitchell claims that O'Keefe's purported attempt to change beneficiaries was ineffective because it controverted both the terms of the life insurance policy and the New York Estates, Powers and Trusts Law § 13-3.2(e) et seq. This statute requires that any beneficiary designation be made in writing and signed by the person making the designation. In his opposition papers, Lord conceded applicability of EPTL § 13-3.2, but argued that O'Keefe's handwriting on the form [*6] constitutes a "signature" pursuant to NY General Construction Law § 46, thereby satisfying EPTL § 13-3.2. At my request, however, the parties submitted supplemental briefing on the issue of whether ERISA preempts state law in this case. Because the plan in question is governed by ERISA, the federal common law doctrine of substantial compliance, rather than New York law, applies in this case.

### A. O'Keefe's life insurance policy was issued pursuant to a "Welfare Benefit Plan" within the meaning of ERISA.

The Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. ("ERISA"), is the comprehensive federal law governing employee benefits. This statute was promulgated by Congress to:

> protect . . . participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal Courts.

ERISA § 2, 29 U.S.C. § 1001(b). ERISA comprehensively regulates, [*7] among other things, employee benefit plans that, "through the purchase of insurance or otherwise," provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability or death. ERISA § 3, 29 U.S.C. § 1002(a).

In the instant case, I first must determine whether the group life insurance policy at issue is part of an "employee welfare benefit plan" under 29 U.S.C. § 1001 and therefore governed by ERISA. If ERISA applies, I must then determine what standard applies under ERISA in a change of beneficiary situation.

The existence of an ERISA plan is a question of fact, to be answered in light of all of the

Case 1:03-cv-00158-WDQ   Document 20-18   Filed 06/13/2003   Page 4 of 12

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 11222          Page 4 of 12

surrounding circumstances and facts from the point of view of a reasonable person. See Kanne v. Connecticut General Life Ins. Co., 859 F.2d 96 (9th Cir. 1988); cf. Grimo v. Blue Cross/Blue Shield, of Vermont, 34 F.3d 148 (2d Cir. 1994) (remanding because factual record was insufficient for the court to determine whether plan was an "employee welfare benefit plan" within meaning of ERISA). ERISA defines an "employee welfare benefit plan" as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained [*8] by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits.

29 U.S.C. § 1002(1) (1988). Although the Policy at issue in the instant case is administered by a Multiple Employer Trust, the Court of Appeals has recently held that Multiple Employer Trusts are deemed "employers" for the purposes of ERISA. See Grimo, 34 F.3d at 151.

"[A] 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc). Department of Labor ("DOL") regulations promulgated after ERISA have clarified when an employee pension or insurance plan will be classified as a "welfare benefit employee plan." These regulations include a "safe harbor" provision setting out four criteria that, if met, will exclude a plan from ERISA coverage. A plan [*9] will be exempted from ERISA coverage if: (1) the employer makes no contributions to the plan; (2) employee participation in the plan is completely voluntary; (3) the employer's sole functions are, without endorsing the program, to permit the insurer to publicize the program to employees or members, collect premiums through payroll deductions or dues checkoffs and remit them to the insurer; and (4) the employer receives no consideration in connection with the program other than reasonable compensation for administrative services actually rendered in connection with payroll deduction or dues checkoffs. 29 C.F.R. § 2510.3-1(j). n2 A plan will be exempted under ERISA only if all of the "safe harbor" provisions are satisfied. See Grimo v. Blue Cross, 34 F.3d at 152 (2d Cir. 1994); Bellisario v. Lone Star Life Ins., 871 F. Supp. 374 (C.D. Cal 1994) (citing Qualls v. Blue Cross of California, Inc., 22 F.3d 839 (9th Cir. 1994)).

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n2 This regulation states as follows:

> the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which:
>
> (1) no contributions are made by an employer or employee organization;
>
> (2) Participation [in] the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through

Case 1:03-cv-00158-WDQ   Document 20-18   Filed 06/13/2003   Page 5 of 12

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 11222                    Page 5 of 12

> payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deduction or dues checkoffs.

29 C.F.R. § 2510.3-1(j).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - [*10]

In the instant case, there is no dispute that the first, second, and fourth exemption provisions are met: there is no evidence that OH&S made any contributions to the policy; participation in the program was completely voluntary; and the employer did not receive any consideration in connection with the policy. This leaves the third criterion, which concerns the employer's function with respect to the program. See 29 C.F.R. § 2510.3-1(j)(3).

I find that OH&S did "endorse" the policy within the meaning of the above regulation and that the plan, therefore, is not exempted from ERISA coverage. In an advisory opinion, the DOL has addressed the construction of the endorsement provision of the ERISA safe harbor provision. The DOL stated that:

> an employer or employee organization will be considered to have endorsed a group or group-type insurance program if the employer or employee organization expresses to its employees or members any positive, normative judgment regarding the program. An employer or employee organization may, in the course of permitting an insurer, insurance agent, or insurance broker to market a group or group-type insurance program to its employees [*11] or members, facilitate the publicizing and marketing of the program, but only to an extent short of endorsing the program. An endorsement within the meaning of section 2510.3-1(j)(3) occurs if the employer or employee organization urges or encourages employee or member participation in the program or engages in activities that would lead an employee or member reasonably to conclude that the program is part of a benefit organization arrangement established or maintained by the employer or employee organization.

DOL Advisory Op. 94-25A, July 11, 1994. The DOL went on to note that it had previously opined that a communication to employees that stated that the employer was "enthusiastic" about a program would be an endorsement. Id. Further, a communication stating that the employer arranged for a group insurance program might be an endorsement if, taken together with other employer activities, it "leads employees or members to reasonably conclude that the insurance program is one established or maintained by the employer or employee organization." DOL Advisory Op. 94-25A, July 11, 1994, n.1.

The record in the instant case includes a March 25, 1991 memorandum sent by OH&S's [*12] Compensation and Benefits manager to all eligible employees concerning the group life insurance program in question. This letter informed the employees that the firm had "chosen" this "new benefit," set out its basic details, referred the employees to a brochure discussing the plan in detail, and "strongly encouraged" employees to attend an enrollment meeting. Other portions of this letter which indicate OH&S's endorsement follows:

Case 1:03-cv-00158-WDQ   Document 20-18   Filed 06/13/2003   Page 6 of 12

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 11222                                Page 6 of 12

> The firm is pleased to announce a new benefit. . . . After extensive review and considerable investigation, the firm has chosen CIGNA to be the provider of this benefit. In order to help you learn about this new benefit in detail, a brochure discussing the plan is enclosed. . . . We strongly encourage you to attend an enrollment meeting. . . . Please take this time to consider taking advantage of this new benefit.

(Lord Supp. Mem. Exh. 6.) I find this letter dispositive in finding that OH&S "endorsed" the plan within the meaning of § 2510.3-1(j)(3).

The cases cited by Mitchell do not persuade me to the contrary. Mitchell cites Dontas v. Metropolitan Life Ins. Co., 1993 U.S. Dist. LEXIS 4443, Civ.A.No. 91-503, 1993 WL 99189 (E.D. La. March 31, 1993). In Dontas, [*13] the court, noting that the promotional brochure did not use the employer's logo, found that the employer did not "endorse" the plan, even though the employer negotiated the best terms for its employees. The court in Dontas, however, seemed persuaded by the overwhelming evidence that the employer "did everything in its power to demonstrate that this was not an ERISA plan." Id. at *22. In fact, in that case the brochure prepared prior to the effective date stated that "your employer is making available to the employees, without endorsement, the opportunity to enroll in Group Universal Life. . . . Group Universal Life is not intended to be an employer-sponsored welfare benefit plan for purposes of [ERISA]." Id. at *23 (citation omitted). There is no such evidence of disavowal in the instant case. Although the initial brochure promoting enrollment did not contain OH&S's name, the Group Universal Life policy had OH&S's name on the front cover, as did the portions of the policy titled "Enrollment Information", "Group Rate", and "Enrollment." I find that these facts, taken together with the strong endorsement contained in the memorandum discussed above, would easily "lead [*14] an employee or member reasonably to conclude that the program is part of a benefit organization arrangement established or maintained by the employer or employee organization." DOL Advisory Op. 94-25A, July 11, 1994, n.1.

I am equally unpersuaded by Mitchell's argument that OH&S's failure to include a "Summary Plan Description" in the Group Life Insurance Policy certificate, as would be required by ERISA, evidences OH&S's intent not to categorize the plan under ERISA. As Mitchell notes, "the failure to comply with ERISA's reporting and disclosure requirements does not remove a plan from ERISA coverage." Mortier v. Massachusetts General Life Insurance Company, 805 F. Supp. 816, 819 (C.D. Cal 1992) (citation omitted). While such a failure is "relevant to who had established and was administering the plan," id., I find OH&S's overwhelming endorsement of the plan dispositive. Mitchell also cites Mortier because the court in that case found no endorsement despite the employer's significant involvement with the plan. The employer in Mortier maintained a file on the policy that contained informational materials, policy change request forms and change forms, and, in addition, [*15] submitted claim forms to the insurer. Unlike here, however, the court was able to state conclusively that the "employer in no way endorsed the plan." Mortier, 805 F. Supp. at 820.

Perhaps the most difficult case to distinguish is Garrett v. Delta Air Lines, Inc., 1978 Life.Cas. (CCH) P376 (N.D. Ind. 1978). In Garrett, the District Court found no endorsement and said that Delta "only provided administrative services." Id. These administrative services, however, included: providing literature to its new employees informing them of the plan, attempting to obtain answers to any questions its employees might have concerning the plan, forwarding its employees' applications for enrollment in the plan to insurer, assisting its employees by providing the insurer with certain employee information and verification, and maintaining a payroll deduction program. The court concluded that "these support services are of a nature contemplated in the Secretary [of Labor's] regulation and do not, as a matter of law, violate the Secretary's regulation or constitute an endorsement of the policy by Delta." Id. While in the instant case there is evidence that OH&S similarly limited [*16] its

Case 1:03-cv-00158-WDQ    Document 20-18    Filed 06/13/2003    Page 7 of 12

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 11222                Page 7 of 12

involvement to administrative services (providing information and creating payroll deduction), it also included plain language of endorsement in its March 25, 1991 memorandum. The plain language of the OH&S memorandum, viewed in light of the DOL opinions and common sense, show conclusively that OH&S "endorsed" the plan within the meaning of § 2510-3.2(j).

In sum, I find that there are no material facts in dispute as to the classification of the OH&S Group Universal Life policy as an ERISA-governed "employee welfare benefit plan." I therefore find as a matter of law that the plan is not excepted from classification as an ERISA plan by the safe harbor provision of 29 C.F.R. § 2510.3-1(j).

**B. ERISA preempts state law.**

Mitchell argues that O'Keefe's unsigned change of beneficiary form was invalid pursuant to the terms of the Policy and the New York Estates Powers and Trusts Law § 13-3.2. n3 Mitchell's reliance on this provision is misplaced, however, because ERISA preempts NY EPTL § 13-3.2. n4

- - - - - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - - -

n3 Mitchell argues that O'Keefe's failure to sign his change of beneficiary form is dispositive under New York law. NY EPTL § 13-3.2(e) reads:

> (e) A designation of a beneficiary or payee to receive payment upon death of the person making the designation or another must be made in writing and signed by the person making the designation. . . .

NY EPTL § 13-3.2(e).

New York courts have been extremely strict in their interpretation of this statute, requiring that the person wishing to change the beneficiary contemporaneously sign the change of beneficiary designation. See Prudential Insurance Co. of America v. Rowson, 1994 U.S. Dist. LEXIS 11710, No. 93 Civ. 7738 (KMW), 1994 WL 455536 (S.D.N.Y. Aug. 19, 1994) (holding, pursuant to the terms of the policy and NY EPTL § 13-3.2(e), that an unsigned and undated change of beneficiary form was invalid and awarding policy proceeds to beneficiaries named on original, signed designation form). Rowson cited Androvette v. Treadwell, 73 N.Y.2d 746, 536 N.Y.S. 2d 43, 532 N.E.2d 1271, which held that

> although the lower courts found that this change was made at decedent's direction and reflected his intent, the lack of a contemporaneous signature by decedent indicating his assent renders the change of beneficiary ineffective under the plain terms of 13-3.2(d) [now 13-3.2(e)]. The statute plainly requires that the designation of a beneficiary under a group life insurance policy 'must be made in writing and signed by the person making the designation' (see Mohawk Airlines v. Peach, 61 A.D.2d 346, 402 N.Y.S.2d 496).

Id., 536 N.Y.S.2d at 43.

Accordingly, under New York law, O'Keefe's failure to sign the form contemporaneously the record indicates he did not sign it at all rendered any attempted change of beneficiaries ineffective. Under this analysis, the original "Enrollment and Waiver Form"

Case 1:03-cv-00158-WDQ     Document 20-18     Filed 06/13/2003     Page 8 of 12

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 11222     Page 8 of 12

would control, and the Estate would be entitled to the proceeds. However, as explained in the ensuing discussion, federal common law, not New York law, governs these facts. [*17]

n4 Mitchell's argument that the attempted change of beneficiaries contravenes the express terms of the policy will be considered below in the discussion concerning appropriate federal common law standards.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Once it is established that ERISA governs the policy in question, I must determine whether ERISA's preemption provisions preempt New York EPTL § 13-3.2. Congress' desire to create a broadly-applicable rule is demonstrated by ERISA's preemption provisions, through which Congress largely displaced any state laws that "relate to" employee benefit plans. n5

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n5 The regulation's function has been described as follows:

> If a state law "relates to . . . employee benefit plans," it is preempted. § 514(a). The saving clause excepts from the preemption clause laws that "regulate insurance." § 514(b)(2)(A). The deemer clause makes clear that a state law that "purports to regulate insurance" cannot deem an employee benefit plan to be an insurance company. § 514(b)(2)(B).

Pilot Life Insurance Company v. Dedeaux, 481 U.S. 41, 43, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1987).

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - [*18]

Vital to analysis of ERISA preemption is Congress' intent in drafting the statute. The Supreme Court in a recent decision has reiterated its conclusion that in passing 29 U.S.C. § 1144(a) Congress intended

> to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . . and to prevent the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.

New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 131 L. Ed. 2d 695, 115 S. Ct. 1671, 1677 (1995) (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142, 112 L. Ed. 2d 474, 111 S. Ct. 478 (1990)).

The Court of Appeals recently has held specifically that ERISA preempts NY EPTL § 13-3.2. In that case, O'Shea v. First Manhattan Co. Thrift Plan & Trust, 55 F.3d 109 (2d Cir. 1995), will beneficiaries sought a declaratory judgment that they, rather than individuals named in an unsigned change of beneficiary form, were entitled to benefits under [*19] an ERISA retirement plan. Plaintiffs argued, inter alia, that the plan administrators improperly accepted an unsigned beneficiary change form, basing their argument in part the invalidity of such a form in the face of NY EPTL § 13-3.2. n6 The court rejected this argument, finding that

ERISA preempted § 13-3.2. In finding preemption, the Court noted that "ERISA's expansive language makes for preemption of 'any and all State laws insofar as . . . they relate to any employee benefit plan' covered by ERISA." O'Shea, 55 F.3d at 113 (quoting New York State Conference of Blue Cross & Blue Shield Plans, 115 S. Ct. at 1677). Noting that preemption will not work if the state law has only a "tenuous, remote, or peripheral connection with covered plans," id. (citing Conference of Blue Cross & Blue Shield Plans, 115 S. Ct. at 1679 (citation omitted)), the Court of Appeals found that EPTL § 13-3.2 should be preempted because it had significant effect on welfare benefit plans:

> EPTL Section 13-3.2(e) affects key plan documents such as the Designation Form and is therefore preempted by ERISA. Had Congress chosen to impose a signature requirement, it could have done so. [*20] To impose such a requirement in New York, but not elsewhere, would frustrate ERISA's goal of establishing a unified national system to safeguard retirement benefits.

O'Shea, 55 F.3d at 114 (citing Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 96 L. Ed. 2d 1, 107 S. Ct. 2211 (1987)).

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n6 The plan stated that "the Trustees may require the Participant to sign appropriate documents to direct the trustees regarding the settlement of the proceeds of the Investment Fund." 55 F.3d at 112. The court found, using an "arbitrary and capricious" standard of review, that the trustees acted within their authority when they accepted an unsigned form. Plaintiffs also argued, as discussed above, that the purported change of beneficiary form was invalid in contravention of EPTL § 13-3.2.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

This holding accords with other recent federal decisions preempting state laws that affect change of beneficiary situations in life insurance cases. See, e.g., Phoenix Mutual Life Insurance Co. v. Adams, 30 F.3d 554 (4th Cir. 1994) (state law doctrine of [*21] substantial compliance preempted by ERISA federal common law); Krishna v. Colgate Palmolive Co., 7 F.3d 11 (2d Cir. 1993) (ERISA, rather than New York law, determined who would be deemed beneficiary to proceeds of ERISA-governed life insurance policy). Accordingly, ERISA preempts NY EPTL § 13-3.2, and Mitchell's argument that § 13-3.2 rendered the attempted change ineffective is without merit. Because ERISA does not itself address change of beneficiary designation construction, I must next determine what standard should be applied in the absence of a controlling state law or applicable ERISA provision.

## II. FEDERAL COMMON LAW

When ERISA preempts a state law but is itself silent on the relevant issue, federal courts create a federal common law of rights and obligations under ERISA regulated plans. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 11, 103 L. Ed. 2d 80, 109 S. Ct. 948 (1989); Phoenix Mutual Life Insurance Co. v. Adams, 30 F.3d 554 (4th Cir. 1994); Krishna v. Colgate Palmolive Company, 7 F.3d 11, 14 (2d Cir. 1993) (citing Amato v. Western Union Int'l, Inc., 773 F.2d 1402, 1419 (2d Cir. 1985)). Courts developing federal common law pursuant to ERISA "are constrained [*22] to fashion only those remedies that are appropriate and necessary to effectuate the purposes of ERISA." United States Steel Mining Co. v. District 17, United Mine Workers of America, 897 F.2d 149, 152 (4th Cir. 1990).

On the facts of the instant case, I am persuaded by the recent Fourth Circuit decision in

Case 1:03-cv-00158-WDQ   Document 20-18   Filed 06/13/2003   Page 10 of 12

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 11222                Page 10 of 12

Phoenix Mutual that adoption of federal common law is appropriate in the context of beneficiary designation compliance under ERISA-governed plans. In Phoenix, a case in which an insured's requested change of beneficiaries was never officially completed in accordance with the terms of the policy, the district court determined that the South Carolina state law of substantial compliance was preempted by ERISA and, accordingly, was left to determine what standard should be applied in its place. n7 The court recognized the dual purposes of ERISA: (a) ensuring that plan and plan sponsors be subject to a uniform body of benefits law, and (b) promoting the interests of employees and their beneficiaries and protecting contractually defined benefits. See Phoenix, 828 F. Supp. at 386. Keeping these purposes in mind, the court then sought to determine "whether these dual purposes [*23] would best be served by the adoption of a uniform federal doctrine of substantial compliance or by requiring that an insured strictly comply with the terms of an ERISA policy's change of beneficiary provisions." Id. The district court and the Fourth Circuit correctly noted that the adoption of either rule as federal common law would subject plan administrators to a uniform body of law, and thereby protect the plan sponsor's interests. Both courts concluded, however, that adoption of the substantial compliance doctrine was preferable when it came to promoting the interests of the employees and their beneficiaries. While the strict compliance doctrine "would, in many instances, require the payment of the plan proceeds to someone other than the person the insured clearly intended to receive the proceeds," the substantial compliance doctrine would more often ensure that policy proceeds are paid in accordance with the "clearly manifested intentions of the insured," and thereby protect the interests of both the plan sponsors and its insureds. n8 See Phoenix, 30 F.3d at 565; Phoenix, 828 F. Supp. at 386. As the Court of Appeals stated, "[a] federal common law of substantial [*24] compliance requiring that an insured intend to change his beneficiary and that he take positive action to effectuate that intent furthers the purposes of ERISA without compromising the integrity of policies issued by plan sponsors." Phoenix, 30 F.3d at 565.

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n7 The facts of Phoenix differ slightly from the instant case, but this does not render its holding less persuasive. The insured in Phoenix visited his employer's personnel department in order to add his stepdaughter to his medical insurance and to change the beneficiary on his life insurance policy. The insured signed a dual-purpose form intended to accomplish both goals, but failed to fill out the "Change beneficiary to:" line of the form. The insured later called the personnel department to confirm the change, and stated his intention to change the beneficiary on the life insurance from his son to his wife. The personnel department never filled out the line designating the new beneficiary. In Phoenix, therefore, the plan administrator had in its possession a form signed by the insured, and the plan administrator failed arrange for the proper completion of the form. Ultimately, however, in Phoenix and the instant case, the insured's attempt to change the beneficiary was incomplete according to the literal terms of the policy.

Phoenix is sufficiently similar to the instant case so that its discussion of substantial compliance is applicable here. Nothing in the doctrine of substantial compliance restricts it to cases where there is a signature on the form. The doctrine exists to "discern the 'real beneficiary' of a given life insurance policy," and "by definition, substantial compliance is less than actual compliance. The point of the doctrine, whether found in federal or state law, is to give effect to an insured's intent to comply when that intent is evident. See Phoenix, 30 F.3d at 556. [*25]

n8 The relevant policy provision in the instant case reads as follows:

> Change of Beneficiary
>
> Each Owner may change the Beneficiary at any time, unless the Beneficiary

Case 1:03-cv-00158-WDQ    Document 20-18    Filed 06/13/2003    Page 11 of 12

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 11222                                Page 11 of 12

> Designation is irrevocable. The change must be made on a form satisfactory to CG and signed by the Owner. No change in Beneficiary will take effect until this form is received by CG. When this form is received, the change will take effect as of the date of the form.

(Arenth Aff., Exh. C at 52.)

Requiring strict, literal compliance with this term would require that the form be actually signed by the insured. The doctrine of substantial compliance, however, would allow me to consider extrinsic facts to determine whether the steps O'Keefe took to change the beneficiary, coupled with his manifest intent, are sufficient to render the attempted change of beneficiary valid.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

The Phoenix court ultimately articulated the doctrine of substantial compliance as follows:

> Pursuant to federal common law, an insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy [*26] when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy.

Phoenix, 30 F.3d at 564 (quoting Phoenix, 828 F. Supp. at 388). I agree that this is the proper standard for the federal common law of substantial compliance, and hereby adopt it on the facts of the instant case. n9

- - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - -

n9 The Court of Appeals' holding in Krishna, 7 F.3d at 14-16, does not foreclose adoption of the federal common law doctrine of substantial compliance. The Krishna court held that ERISA preempted application of the New York state law of substantial compliance in the realm of beneficiary designations. In Krishna, the insured changed his will to exclude the individual originally named as beneficiary on his life insurance policy, but took no steps in accordance with the policy to change the beneficiary of that policy. The court noted that the policy had a clear provision calling for the filing of written designations to name or change a beneficiary, and that it would be counterproductive to require plan administrators to look beyond the policy to varying state statutes on wills, trusts and estates, or domestic relations to determine the proper Policy beneficiaries. Id. As noted above, however, the insured made no attempts to comply with the terms of the policy. Thus, although the court found that administrators should look to the plan rather than to conflicting state laws, it did not determine whether the federal common law doctrine of substantial compliance could be employed to assist in determining whether an insured had sufficiently, albeit not literally, complied with the terms of his policy. Moreover, the court's rejection of the state law doctrine of substantial compliance is in no way inconsistent with the subsequent adoption of a federal substantial compliance standard. See, e.g., Phoenix, 30 F.3d 554 (state law doctrine of substantial compliance preempted and replaced with federal common law doctrine of substantial compliance).

- - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - [*27]

Case 1:03-cv-00158-WDQ   Document 20-18   Filed 06/13/2003   Page 12 of 12

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 11222                Page 12 of 12

Adoption of the federal common law doctrine of substantial compliance, however, does not allow me to decide the merits of this case at this stage. Because the standard requires examination both of the insured's intent and the steps taken to make the change of beneficiary, disposition of this matter will require more extensive fact-finding. I note particularly the Court of Appeals' admonition that "'summary judgment is notoriously inappropriate for determination of claims in which intent, good faith and other subjective feelings play dominant roles.'" Krishna, 7 F.3d at 16 (quoting Leberman v. John Blair & Co., 880 F.2d 1555, 1560 (2d Cir. 1989) (citation omitted)). It would be inappropriate to make a determination of intent without providing the parties with an opportunity to develop the record more fully on this issue. Accordingly, both defendants' motions for summary judgment are denied.

**CONCLUSION**

A federal common law standard of substantial compliance applies to whether O'Keefe successfully changed his life insurance policy beneficiary. Because that standard requires a factual determination of O'Keefe's intent, both defendants' motions for summary judgment [*28] are denied. Mitchell and Lord shall submit a proposed discovery schedule with respect to issues germane to determination of O'Keefe's compliance with the terms of the policy's change of beneficiary provision on or before September 1, 1995.

SO ORDERED:

Dated: New York, New York
August 7, 1995

Loretta A. Preska, U.S.D.J.

Service: Get by LEXSEE®
Citation: 1995 U.S. Dist. LEXIS 11222
   View: Full
Date/Time: Friday, June 13, 2003 - 2:34 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.