UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | | |
|---|---|---|
| MEBA PENSION TRUST, et al. | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. WDQ 03-158 |
| NIKKI SUMMERVILLE, et al. | * | |
| Defendants, | * | |

\* \* \* \* \* \* \* \* \* \* \*

**JANET SUMMERVILLE'S OPPOSITION
TO NIKKI SUMMERVILLE'S MOTION FOR SUMMARY JUDGMENT**

Janet Summerville ("Janet"), by her attorney, responds to and opposes the Motion for Summary Judgment filed herein by Nikki Summerville ("Nikki").

I.   **Introduction and Overview**

Nikki's Motion for Summary Judgment and supporting Memorandum seek summary judgment <u>without addressing</u> (1) the terms of the MEBA Pension Trust and the plan's specific requirements, including the grant of discretion contained in the Plan; (2) the legal effect of that grant of discretion; or (3) the effect of the Plan's prior decision to reject the designation of beneficiary form bearing Nikki's name as ineffective. Nikki has not cited any authority addressing the interplay between the Plan's grant of discretion to interpret and administer the Plan and the doctrine of substantial compliance, on which she relies.[1] The cases she cites (as discussed more fully below) do not involve

---

[1] In general terms, this doctrine permits a court to find that a participant in a Plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., "substantially complied" with the Plan's terms and requirements to designate a beneficiary, and thus implements the intent of the participant.

interpleader actions filed <u>after</u> an initial decision has been made by the Plan challenged on appeal, and do not refer to Plan discretion.

Secondly, although the cases Nikki has cited are replete with substantive discussions of the nature and character of admissible evidence in "substantial compliance" cases, Nikki's argument does not address the quality of evidence or explain how or why her Affidavits meet the proper evidentiary standards to be applied by this Court. As is clear from the Affidavit of Janet Summerville (hereinafter "Janet's Affidavit"), attached hereto as Exhibit A, the Affidavits of Nikki and Patti Summerville contain rank hearsay and many statements as to which neither has any personal knowledge. These statements are not properly before the Court. <u>See</u> Rule 56(e) (requiring that Affidavits supporting or opposing summary judgment be made on personal knowledge) and discussion <u>infra</u>.

Thirdly, even if this Court were to evaluate this case under the doctrine of substantial compliance, some weight should be given to the Plan's evaluation of its own documents. As stated in the Complaint and confirmed under oath in the Affidavit of Allen Szymczak, submitted by Janet as Ex. A attached to her Motion for Summary Judgment, the Plan itself had concluded that the designation form in favor of Nikki should be rejected and her appeal denied; the Plan opted to file an Interpleader action after Nikki appealed in order to avoid the risk of paying twice.

Fourthly, and finally, applying the doctrine of substantial compliance, the Court would have to find that the participant (Daniel, in this case) "evidence[d] his or her intent to make the change" and "attempt[ed] to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of

2

BA2/219223

beneficiary provisions of the policy." Phoenix Mut. Life Ins. Co. v. Adams, 30 F.3d 554, 564 (4th Cir. 1994). This standard simply cannot be met in this case. See Steamship Trade Ass'n v. Bowman, 247 F.3d 181 (4th Cir. 2001) (rejecting second wife's claim to life insurance policy proceeds on a substantial compliance theory, even though decedent had designated his second wife as the beneficiary for other benefits).

Here, Nikki relies on the form which Daniel himself did not sign and which she herself did sign, coupled with her and her mother's hearsay testimony as to Daniel's intentions. This evidence cannot meet either prong of the Phoenix test: (1) it is not clear evidence of Daniel's intent, in that he himself did not complete the portion of the form bearing Nikki's name, nor did he sign it; and (2) he did not undertake "positive action" similar to that required by the Plan to effectuate a change. There is no written directive, signed or unsigned, in Daniel's own writing; there is no communication from Daniel to the Plan requesting a change; there is no notarized signature. There simply is no factual predicate upon which this Court could conclude that this documentation expresses or embodies Daniel's intent and wishes as opposed to Nikki's intent or wishes.

## II.   Additional Factual Information

### A.   Janet's Affidavit

Janet continues to assert that the Court should make its decision on the record as it existed before the Plan, and not consider the Affidavits now submitted by Nikki, her mother and Ms. Pot, Exhibits 7, 10 and 11 to Nikki's Brief. However, because those Affidavits contain hearsay statements sworn to without personal knowledge by the Affiants, and because Janet herself has personal knowledge as to those matters, Janet has submitted her own Affidavit, attached hereto as Exhibit A.

3

BA2/219223

Janet states in her Affidavit that neither Nikki nor Patti were present at or participated in the discussions concerning the declining health of Janet and Daniel's mother, as to which Nikki and Patti have purported to testify in their respective affidavits. Janet herself was present and has personal knowledge. Janet further states that before his death Daniel had substantial problems with alcohol, lived in San Francisco with his aged mother, was not employed, was financially supported by his mother and by Janet and her husband. She states that Daniel had a third, adopted child.

She also states that at the time of his death, Daniel owed money to her and to his mother (as well as others); that Daniel appointed her his Personal Representative in his Will dated November 9, 2000; a copy of that Will is attached to her Affidavit. The date of the Will, two months <u>after</u> the events on which Nikki relies, shows that Daniel had not lost confidence in Janet, or become alienated from her.

### B.   Nikki's receipt of the § 401(k) Plan benefits

Attached hereto as Exhibit B are documents received from counsel to the Plan, showing that on September 18, 2000, Daniel executed a Beneficiary Designation Form for his MEBA § 401(k) Plan, designating Nikki as his beneficiary for that fund of money. This form, like the other form, had Nikki's name and address completed in her handwriting, but Daniel signed this form. Nikki received gross proceeds of over $59,000 and net proceeds of $53,225.51.

These documents are particularly significant for two reasons: First, Daniel signed the form, indicating he was certainly able to complete and sign forms when he desired to do so. Secondly, these documents demonstrate that Nikki did indeed receive financial

benefits, and that Daniel did indeed provide for her and her children. To the extent that Daniel wanted to "make things right" with Nikki, it appears that he did so.

## ARGUMENT

### I. The Terms of the Plan

"The award of benefits under an ERISA plan is determined 'in the first instance by the language of the plan itself.'" <u>Steamship Trade Ass'n</u>, 247 F.3d at 183, <u>quoting</u> <u>Lockhart v. United Mine Workers of American 1974 Pension Trust</u>, 5 F.3d 74, 77 (4th Cir. 1993).

As stated by Allen Szymczak, Plan Administrator, whose Affidavit is before the Court as Ex. A to Janet Summerville's Motion for Summary Judgment, the Plan requires that the participant sign the designation of beneficiary. See ¶5, Szymczak Affidavit.

This provision is an appropriate safeguard, designed to avoid mischief. Without the signature of the participant himself, the Plan would have the impossible task of sorting out which "directives" not actually signed should be honored and which of those not signed represented simply an effort by a family member to obtain a financial edge for himself or herself. The requirement of a signature provides certainty that the wishes expressed in the form are those of the participant himself, and not those of someone else. As Plan Administrator, Szymczak stated in his Affidavit there have been "no exceptions" to the requirement of "a signed designation of beneficiary form." ¶6, Szymczak Affidavit.

## II.    The Discretion Conferred in Plan Documents

Nikki's brief does not address the legal effect of the discretion conferred by the Plan, nor the series of decisions and actions taken by the Plan, nor the deference to be given by the Court to those decisions.

In this case, the Plan made a decision to reject Nikki's claim and pay the money to Janet. See Ex. 2 to Nikki's Motion, letter of June 11, 2002. Nikki protested this decision, and the Plan responded that "[w]e believe our original decision about your claim to this Benefit, which we communicated to you by letter June 11, 2002, is the correct decision." See Ex. 5 to Nikki's Motion. The Plan treated Nikki's protest as an appeal, and a Subcommittee of the Trustees "expressed the view that Janet, the deceased's sister, was properly designated as beneficiary." ¶12, Szymczak Affidavit. They also recommended filing an Interpleader to avoid paying twice, in case of litigation and a different outcome. Id. The Trustees adopted this recommendation.

The Plan has thus three times concluded that Janet is the proper beneficiary; the Interpleader action was not taken because the Plan, or its Administrator, or the Trustees had no view of how their own documents should be interpreted, but rather to protect themselves from potential liability in a litigation-prone society.

This Court should give deference to the decisions and interpretations made by the Plan, in accordance with the authorities cited by Janet in her Brief in support of her Motion for Summary Judgment.

### III. Portions of the Evidence Offered by Nikki Must Be Rejected

Janet continues to assert that the Court should decide the matter on the record as found in the files of the Plan and the Plan Administrator, and not consider any materials which go beyond that record.

However, there are other reasons to reject Nikki's submissions.

The affidavits submitted by Nikki are replete with hearsay and matters as to which the Affiants do not have personal knowledge. Obvious examples of this are the statements that Janet sought to have her mother "declared incompetent" or placed in a "nursing home." See ¶19, Patti Summerville Affidavit, which states "Dan told me…" and purports to testify that Janet had had her mother declared incompetent and that Dan had protested certain decisions. Neither Patti nor Nikki lived in San Francisco or was personally present to witness these events. Nikki's affidavit itself makes clear that she is reciting hearsay: see ¶8 of Nikki's Affidavit, which states that Daniel told her what he wished; ¶12, which states what Daniel allegedly said; ¶14, which states what Daniel allegedly said; ¶19, which purports to characterize the relationship between Janet and Daniel; and ¶20, which alleges that actions by Janet which did not occur.

These statements are inadmissible under Rule 56(e); are inadmissible under Rules 801(c) and 802 of the Federal Rules of Evidence; and are inadmissible under the Maryland Dead Man's Statute, Md. Ann. Code, Cts. and Jud. Pro. Art. § 19-116, which prohibits testimony by a distributee or legatee "concerning any transaction with or statement made by the dead…person…" See also Farah v. Stout, 112 Md. App. 106, 114, 684 A.2d 471, 475 (1996) (rejecting testimony by potential distributee as to what decedent allegedly said or promised her on basis of this statute).

7

The same reasons compel rejection of the statements contained in Nikki's, Patti's and Ms. Pot's Affidavits submitted here. Out-of-court statements, which cannot be tested now by cross examination, are inherently unreliable and are consistently barred.

### IV.  The Doctrine of Substantial Compliance

The doctrine of "substantial compliance" requires evidence of the participant's "intent to make the change" and evidence that the participant "attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy." Phoenix Mut. Life Ins. Co. v. Adams, 30 F.3d 554, 564 (4th Cir. 1994).

The record here lacks such clear evidence.

Daniel did not sign any document designating Nikki as his beneficiary for the Money Purchase Benefit. He did not communicate an intent to make a change to the MEBA Plan. There is no evidence of any communications to MEBA, steps to communicate to MEBA or directions to outside persons (such as a lawyer, holder of a power of attorney, etc.) to implement directions. There is no evidence that the Plan itself failed to implement proper directions it had received, or failed to record a proper directive on its books, as can be the case in substantial compliance cases. There is no evidence of a recent marriage, or a sudden accidental death preventing completion of paper work—circumstances also seen in the "substantial compliance" cases with some frequency.

Nikki cites four cases on substantial compliance, each of which is discussed below.

8

BA2/219223

1. In <u>Phoenix</u>, there was evidence of direct communications by the decedent/plan participant to <u>the Plan itself,</u> seeking to implement and effectuate a change. In <u>Phoenix</u>, the dispute was between decedent's son, born to a first marriage, and decedent's second wife, who survived after the husband/father was killed in a plane crash. Decedent married his second wife in January 1990; in February of 1990 he signed a form to change his beneficiary from his son to his wife, completing all but one section. In March of 1990 decedent confirmed to the company manager in charge of making the change by telephone that he wished to make the change. In May of 1990 the company manger retired, inexplicably taking all paper work to his home, without having made the change. In September of 1990, decedent died in a plane crash. The company manager recalled the direction to make the change, and had no explanation as to why it had not been implemented. The dispute arose when the son refused to relinquish his claim to the proceeds.

On these facts, the court found substantial compliance. "By going to the home office of his employer and executing a form which he was told could provide the authority to change his beneficiary...Bill took steps to effectuate his intent to change the beneficiary." 30 F.3d at 568.

2. In <u>Metropolitan Life Ins. Co. v. Hall</u>, 9 F. Supp.2d 560 (D. Md. 1998) (Davis, J.), there was unequivocal evidence of extensive communications to an attorney—an unrelated third party—directing certain changes. In this case, the dispute was between the first husband and the second husband, whom the decedent had recently married. When the wife/plan participant realized she was dying and needed to get her affairs in order, she engaged her attorney to prepare papers necessary to make her second husband

the beneficiary of her insurance policy (as well as in other ways). She executed (with witnesses and in front of a notary) a will, a trust document, a general power of attorney, an advance health directive and a life insurance policy change of beneficiary designation, all in favor of her second husband, just days before her death. The only issue appeared to be that the writing changing the designation of the life insurance policy was not on the form provided by the insurance company. 9 F. Supp.2d at 563.

The court relied on the fact that independent counsel, "an independent witness, [and] a state-licensed notary public" all could "attest to the facts" that decedent intended to change the beneficiary to her second husband. The court also noted that decedent was in hospice care and dependent on others and "did everything in her power, given the circumstances of her serious medical condition, to get her affairs in order." Id. at n. 3.

3. Davis v. Combes, 294 F.3d 931 (7th Cir. 2002). This case involved a dispute between a surviving husband, who apparently had little success in managing finances, and the decedent's sister. Decedent had requested and received the paper work to change her designation of beneficiary; she completed the form but failed to sign it; it was submitted to the company, accepted, and apparently acknowledge in writing. 294 F.3d at 935. She simultaneously changed her designation of beneficiary in the same way on other policies. The court concluded that the evidence "leaves no doubt" about decedent's intent (id. at 942).

4. Connecticut Gen. Life Ins. Co. v. Mitchell, No. 94 Civ. 4648 (LAP), 1995 U.S. Dist. LEXIS 11222 (S.D.N.Y. Aug. 8, 1995). This case accepted the Phoenix court's analysis of the doctrine of substantial compliance, but ruled that it could not decide the issue of what the decedent's intent had been on a motion for summary judgment.

Furthermore, there are cases other than those cited by Nikki on "substantial compliance." In a recent case, <u>Steamship Trade Ass'n v. Bowman</u>, 247 F.3d 181 (4th Cir. 2001), a dispute arose between the decedent's mother and his second wife; decedent had made other changes of beneficiary for other benefits in favor of his second wife, but the court ruled that his mother remained the beneficiary of his life insurance under the "plain language" of the beneficiary designation forms. The court cited and relied on <u>Phoenix</u> for its analysis. <u>See</u> <u>also</u> <u>Suntrust Bank v. Aetna Life Ins. Co.</u>, 251 F. Supp.2d 1282 (E.D. Va. 2003) (rejecting an argument of "substantial compliance" where the participant had contacted the Plan office and had made other changes of beneficiary for other of his benefits.) In the present case, Daniel had similarly changed his designation of beneficiary on one benefit, but not the other. Both <u>Steamship Trade</u> and <u>Suntrust</u> rejected the idea that that fact implied an intent to change as to all.

Although Nikki relies entirely on the doctrine of "substantial compliance" and states that Daniel "clearly express[ed] his intent and [took] positive steps to change the beneficiary," Brief at 12, she makes only a sketchy analysis of application of law to these facts. Nikki states that "[t]he facts now before the Court clearly show Mr. Summerville's intentions to change his beneficiary....Mr. Summerville expressed his intent to change the beneficiary of the MPB to several individuals and in writing on the change of beneficiary form. Mr. Summerville....completed the form, executed it before a notary, and returned it to MEBA." <u>Id.</u> at 11-12.

This evidence, even if properly before the Court, does not support Nikki's conclusion. In fact, the evidence before the court shows that Daniel did <u>not</u> himself write Nikki's name in the beneficiary section; she admits that she did that. Daniel did <u>not</u> sign

11

the form directing that the change be made; Daniel did <u>not</u> telephone or otherwise write to MEBA directing that the change be made or expressing an intent to make Nikki his beneficiary for the Money Purchase Benefit; Daniel did <u>not</u> direct an independent third party such as a lawyer to implement a desired change for him. Furthermore, the fact that a few days earlier Daniel had correctly completed the form to make Nikki his beneficiary of his 401(k) plan shows that (a) she received a financial benefit consistent with the statements he allegedly made that he wanted to make things "right" and to provide money to her and her children, and (b) that he knew perfectly well how to complete and sign forms.

Nikki has not cited any authority that finds substantial compliance on the basis of such tenuous facts.

Furthermore, it is plain from these materials that a general application of notions of "fairness" would not favor Nikki: Daniel owed money to both Janet and his mother, and Nikki has not committed to repay it; Daniel has a third child, and Nikki has given no signal that she would pay his debts or share with either of his other children. Nikki has already received over $50,000 in benefits upon Daniel's death. Thus, Nikki has no general equitable claim.

Absent such evidence, there is no factual predicate upon which the Court could find either the "intent" or "positive action" representing the equivalent of full compliance with the Plan's requirements. This Court should reject the assertion of substantial compliance in this case.

## **CONCLUSION**

For the foregoing reasons, Janet Summerville respectfully prays that Nikki's motion for summary judgment be denied.

*/s/ Nell B. Strachan*
Nell B. Strachan
Federal Bar No.: 00408
2 Hopkins Plaza
Baltimore, Maryland 21201
410-244-7464

Attorney for Janet Summerville

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of June, 2003, copies of the foregoing Janet Summerville's Opposition to Nikki Summerville's Motion for Summary Judgment were mailed, first class, postage prepaid, to:

> Barbara Kraft, Esquire
> Richard W. Gibson, Esquire
> Beins, Axelrod, Kraft, Gleason & Gibson, P.C.
> 1717 Massachusetts Avenue, Suite 704
> Washington, D.C. 20036
> **Attorneys for MEBA Pension Trust**

and

> Jeffrey A. Wothers, Esquire
> Cristina A. Milnor, Esquire
> Niles, Barton & Wilmer, LLP
> Suite 1400
> 111 South Calvert Street
> Baltimore, Maryland 21202
> **Attorneys for Nikki Summerville**

*/s/ Nell B. Strachan*
Nell B. Strachan

13

BA2/219223