UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | |
|---|---|
| MEBA PENSION TRUST, et al. | * |
| Plaintiffs, | * |
| v. | *   Civil No. WDQ 03-158 |
| NIKKI SUMMERVILLE, et al. | * |
| Defendants, | * |

\* \* \* \* \* \* \* \* \* \* \*

## AFFIDAVIT OF JANET SUMMERVILLE

Janet Summerville, being first duly sworn, deposes and says:

1. I have personal knowledge of the matters and facts set forth herein and am competent to testify thereto.

2. I make this Affidavit at the request of my counsel and to provide factual information in response to assertions and statements in Affidavits signed by Patti Summerville (Ex. 7) and Nikki Summerville (Ex.10) and submitted to this Court in support of Nikki's Motion.

3. My brother Daniel Summerville ("Dan") and I are the only two children of our parents, Randall and Angelina Summerville. Our father died in San Francisco in 1991. Our mother, Angelina, survives and lives in San Francisco.

Dan married Patti in 1969, and they are the parents of Nikki. Patti had a child from a prior marriage, and Dan adopted this child as his own, Terry Summerville.

Dan later married a second time, and that marriage produced his son Danny, whose legal surname is now Deane, as stated in Patti Summerville's affidavit (¶ 10).

4. Dan, a merchant seaman in the Merchant Marines, had significant difficulties with alcohol. His alcoholism affected all his relationships, and, when he was drinking, made him belligerent and aggressive. Up until Dan's accident in 1999, he and his daughter Nikki were rarely in contact.

5. As Patti Summerville states in her Affidavit, ¶ 11, in 1999, Dan was involved in a head-on auto accident, resulting in serious injuries in Hawaii. I flew to Hawaii to care for Dan after his hospitalization and to get him established in a rehabilitation facility. I believe that after this accident, Dan and Nikki had more frequent contact than in the past. Eventually Dan was able to return to San Francisco, where he lived with our mother (who at the time was age 94) in an apartment in her house. He did not work, and his only income was Social Security disability payments. My husband and I paid for substantial rehabilitation expenses for Dan, and we lent him money to purchase a car.

6. In February and March of 2002, our mother (who at the time was age 96) had some significant health issues. Dan (who lived under her roof) had volunteered to monitor her medications, manage incidental household expenses, and look out for her. He did not meet his responsibilities because, I believe, he was drinking heavily. Our mother was hospitalized twice in February and March, and needed care and attention. We anticipated that she might need full time in-house care or nursing home care in the near future. It seemed likely that she would be unable to continue to live alone, or to pay her own bills and manage her own affairs. At the time, my husband and I lived in Portland, Oregon, 600 miles to the north.

7. On March 13, 2002, a family meeting was held at the office of our mother's attorney. It was attended by my husband and me; Dan; our mother; and her attorney.

Neither Patti nor Nikki was present. At this meeting, our mother executed a durable power of attorney appointing me her attorney in fact; she also executed an advanced health care directive. Dan was present at and consented to these steps and decisions; he did not protest. I did not attempt to have him "physically removed from the home" or to have my mother "placed in a nursing home," as stated in ¶ 20 of Nikki's affidavit. We did arrange to have full-time in-home care for my mother.

8. Fortunately, my mother's health has improved since March of 2002; she continues to live at home (with care in the home); she is lucid and well aware of what is going on around her, and although she will be 98 in July, she retains the personality she has always had. I did not ever, at any time, seek to have her "declared incompetent" as Nikki asserts in ¶ 20 of her affidavit, nor was my mother ever "placed in a nursing home." Neither Nikki nor her mother, Patti, was present at the family meeting on March 13, 2002, where the arrangements for the future were discussed.

9. Dan died less than a month after the family meeting in San Francisco, on April 10, 2002. His will (copy attached as Ex. A), executed on November 9, 2000, recited that he had two (not three) children (naming Nikki and his son Daniel); provided that his estate should be divided equally between his two children; named me as his Executor; and provided that in the event he died before his son reached the age of 18, I would be the Custodian for his son's share.

10. After Dan died, my husband, Hal Bahls, gathered and reviewed the information as to Dan's Estate and its potential assets and liabilities. The only assets we could identify were potentially the Money Purchase Benefit at issue in this lawsuit and his MEBA Pension Trust 401(k) Plan proceeds, neither of which appeared to be an asset

of his Estate. (The 401(k) plan was valued at $61,950.98 on December 31, 2001). His liabilities were significant: He owed his mother over $10,500 as recorded by her in her log book, for expenses she incurred for him; he owed my husband and me $2,500 we lent him to buy a car, plus over $6,500 we advanced for rehabilitation expenses related to his accident; he owed over $8,500 in unpaid medical bills and over $22,800 in credit card debt. He owed $19,260.97 on his car which was later repossessed. Hal reviewed Dan's liabilities and lack of assets with Patti, Nikki, and me in a family meeting on April 17, 2002. There was no money in the Estate to distribute pursuant to Dan's instructions. In response to Patti and Nikki's interest in being involved in Dan's estate, I resigned as the Executor, and wrote out the note, dated April 17, 2002, attached by Nikki as Ex. 14 to her motion.

Dated: June 26th, 2003

JANET SUMMERVILLE

Subscribed to and sworn before me, a Notary Public, this 26th day of June, 2003.

My Commission Expires: 12/23/06

JENNIFER KRISTEN GARZA
Commission # 1391462
Notary Public - California
San Diego County
My Comm. Expires Dec 23, 2006

4

BA2/219191

# LAST WILL AND TESTAMENT
# OF
# DANIEL R. SUMMERVILLE

I, DANIEL R. SUMMERVILLE, over the age of eighteen (18) years, a resident of the City and County of San Francisco, State of California, being of sound and disposing mind and memory and not acting under duress, menace, fraud or the undue influence of any person whomsoever, do hereby make, publish and declare this to be my Last Will and Testament in the manner following, that is to say:

FIRST: I hereby revoke any and all former Wills and Codicils to Wills by me at any time made.

SECOND: I hereby direct my Executor hereinafter named, to pay all my just debts and funeral expenses as soon after my demise as can lawfully and conveniently be done.

THIRD: I hereby declare that I am not now married. I do further declare that I have two (2) children, namely, NIKKI SUMMERVILLE, a daughter, and DANIEL L. DEANE, a son.

FOURTH: I hereby give, devise and bequeath all of my estate of every kind, nature and character and wheresoever the same may be situate to NIKKI SUMMERVILLE, my daughter, and DANIEL L. DEANE, my son, in equal shares; provided, however, that if the said DANIEL L. DEANE is under age 18 at the time of my death, I give this gift to JANET M. SUMMERVILLE, my sister, as Custodian for the said DANIEL L. DEANE under the

1

Exhibit A to Affidavit of
Janet Summerville

California Uniform Transfers to Minors Act.

In the event that either NIKKI SUMMERVILLE, my daughter, or DANIEL L. DEANE, my son, should predecease me, then the share of such predeceased child shall go to and vest in his or her then living issue, by right of representation, and if there be no such issue, then to the survivor of my said son and daughter.

FIFTH: Except as expressly provided in this Will, I have intentionally made no provision for any other person, whether claiming to be an heir of mine or not, and if any person shall be successful in a court of final jurisdiction in establishing a right to any portion of my estate, except as expressly provided in this Will, I give to such person the sum of Five Dollars ($5.00) and no more. If any beneficiary under this Will shall directly or indirectly contest this Will (which shall include any Codicil hereto) or object to or oppose the probate thereof, or take any proceedings before any court to annul any provision thereof, or have any provision thereof declared void, or to have the probate thereof revoked, or should any person, if requested to do so by my executor, decline to join in the application for the probate of this Will or decline to assent to the probate thereof, then and in any such event I direct that all interest of such person in or under this Will as a legatee or devisee shall cease and become void, and the sum or property or benefit such person would have received under said Will shall be added to the residue of my estate and shall be distributed to the beneficiaries of such residue as herein provided in the same shares and in the same manner as if such person so offending against the provisions of this paragraph had died at that time without heirs.

SIXTH: I do hereby nominate and appoint JANET M. SUMMERVILLE, my sister, Executor of this my Last Will and Testament to serve without bond.

I do further authorize and empower my said Executor to sell, with or without notice, at either private or public sale, and to lease any property belonging to my estate, subject only to such confirmation of court as may be required by law.

I do further authorize and empower my said Executor to make divisions, allocations or distributions in cash or in kind, including in undivided interests, by prorata or non-prorata division, or in any combination of these ways (with no obligation to take account of the tax basis of the assets) in the discretion of the Executor; and on any partial or total termination of the estate, to distribute property to a Custodian for a minor beneficiary under the Transfers to Minors Act of any state, or to use any other means of making distribution to a minor under applicable law or terms of this Will.

IN WITNESS WHEREOF, I have hereunto set my hand at San Francisco, California, this 9th day of November, 2000.

_____
DANIEL R. SUMMERVILLE

The foregoing instrument, consisting of four (4) pages, including the following page, was at the date hereof, by DANIEL R. SUMMERVILLE signed as and declared to be his Will, in the presence of us who, at his request and in his presence, and in the presence of each other, have subscribed our names as witnesses thereto. Each of us observed the signing of this Will by DANIEL R. SUMMERVILLE and by each other subscribing witness, and knows that

3

each signature is the true signature of the person whose name was signed.

Each of us is now more than eighteen (18) years of age and a competent witness, and resides at the address set forth after her name.

We are acquainted with DANIEL R. SUMMERVILLE. At this time, he is over the age of eighteen (18) years, and to the best of our knowledge, he is of sound mind, and is not acting under duress, menace, fraud, misrepresentation, or undue influence.

We declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of November, 2000, at San Francisco, California.

_____          Residing at     1095 Deanna Drive
MARILYN A. YOUNG                                   Menlo Park, California

_____          Residing at     2320 - 31st Avenue
MAUREEN P. MAHONEY                                 San Francisco, California

4