```
          IN THE UNITED STATES DISTRICT COURT FOR
          THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                  *
MEBA PENSION TRUST, et al.,       *
     Plaintiffs,                  *
v.                                *    CIVIL NO.:  WDQ-03-158
NIKKI SUMMERVILLE, et al.,        *
     Defendants.                  *
*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

MEBA Pension Trust, together with its board of trustees (collectively, "the plan"), has brought this interpleader action to avoid multiple liability to competing claimants of a Money Purchase Benefit ("MPB") that had vested in decedent Daniel R. Summerville ("Mr. Summerville"). Defendants Nikki Summerville and Janet Summerville are Mr. Summerville's daughter and sister, respectively. Each claims to be the rightful beneficiary of his MPB, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. Janet Summerville claims under a properly executed designation-of-beneficiary form, dated October 25, 1986, Szymczak Aff., Ex. 2; Nikki Summerville under an improperly executed form, dated

September 21, 2000, Szymczak Aff., Ex. 3.  The plan has paid the funds into the registry of the Court and is no longer a party to the litigation.  Both claimants have moved for summary judgment.  No hearing is necessary.  Local Rule 105.6 (D. Md. 2001).

SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to summary judgment as a matter of law.  In considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

A fact issue is material if it must be decided to resolve the plaintiff's substantive claim.  *Id.* at 248.  The "materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  *Id.*

A dispute about a material fact is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party."  *Id.* at 248.  Thus, "the judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded [factfinder] could return a verdict for the [nonmoving party] on the evidence presented."

*Id.* at 252. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but the opponent must bring forth evidence upon which a reasonable fact finder could rely, *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252.

## ANALYSIS

The federal common law of substantial compliance governs the validity of an attempted change in the designation of the beneficiary of an ERISA employee-benefit plan.[1] *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 564 (4th Cir. 1994). A plan participant substantially complies with the plan's change-of-

---

[1] Janet Summerville argues that the law of substantial compliance has no application because the Court may only review the decision of the plan administrator regarding the proper beneficiary for abuse of discretion. The administrator, however, finally decided not to decide the proper beneficiary. *See* Szymczak Aff., Ex. 6 ("After discussion, the Subcommittee [of the MEBA Pension Trust] recommended that, in its view, the deceased's sister was properly designated as the Beneficiary. Nevertheless, in light of the competing claims for Mr. Summerville's MPB benefits by [Nikki Summerville] and Mr. Summerville's sister, and in order to avoid the possibility of the Plan paying twice, rather than disbursing the funds to the sister, the Subcommittee recommended that an interpleader claim be filed with the Court of proper jurisdiction, that the money be paid into the Court, and that the Court decide which of the two Claimants should receive the benefit. The Plan's Board of Trustees ratified the decision on October 24, 2002. . . . [T]he decision of the Trustees . . . is now final."). Thus, there is no decision of beneficiary to review. Nor can Janet Summerville insist upon strict compliance with the terms of the plan when the law requires less.

beneficiary provisions if the participant: (1) evidences his or her intent to make the change; and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the plan. *Id.* Obviously, substantial compliance is less than strict compliance. *Id.* at 565. The doctrine aims to give effect to the plan participant's intent, when evident. *Id.*

Nikki Summerville herself, her mother Patti Summerville, and her friend/former babysitter Peggy Pot, have all testified that Mr. Summerville, on separate occasions in September 2000 or earlier, told them that he wanted to designate his daughter the beneficiary of his MPB.[2] N. Summerville Aff. ¶ 8; P. Summerville Aff. ¶ 16; Pot Aff. ¶ 10. Nikki Summerville has also testified that in September 2000, her father "produced" the change-of-beneficiary form in her presence, signed it, and "directed [her] to sign" it under the "Beneficiary Designation" subsection.[3] N.

---

[2]Janet Summerville contends that Nikki Summerville is incompetent to testify to Mr. Summerville's statement of intent under Maryland's "Dead Man's Statute," Md. Code Ann., Cts. & Jud. Proc. § 9-116 (Repl. Vol. 2002). She errs. Because federal law supplies the rule of decision in this case, the Maryland "Dead Man's Statute" does not apply. Fed. R. Evid. 601. Janet Summerville also contends that Mr. Summerville's statements are inadmissible under Fed. R. Civ. P. 56(e) as hearsay. She errs again. The hearsay rule does not exclude statements of an out-of-court declarant's then-existing state of mind, including the declarant's intent or plan. Fed. R. Evid. 803(3).

[3]Objecting to this latter testimony, Janet Summerville again invokes Maryland's "Dead Man's Statute" and the hearsay rule. The "Dead Man's Statute" does not apply. *See supra* note 2. The command, "Sign," moreover, makes no assertion of fact that would have been true or false. A simple imperative, it falls outside the definition of hearsay altogether. Fed. R. Evid. 801(a), (c).

Summerville Aff. ¶¶ 11-12.  This uncontradicted evidence shows that Mr. Summerville had the requisite intent.

Of course, Nikki Summerville, her mother, and Peggy Pot are not disinterested witnesses.  Generally, when "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate."  Fed. R. Civ. P. 56 advisory comm. nn. to 1963 amend.  Nevertheless,

> [i]n order for the opposing party to raise an issue of credibility, [it] must produce by way of affidavit or otherwise sufficient evidence to show the court that at trial [it] will be able to produce some fact to shake the credibility of the affiants.  Mere hopes are not enough.

*Carroll v. United Steelworkers of Am., AFL-CIO-CLC*, 498 F. Supp. 976, 978 (D. Md.)(internal quotation marks omitted), *aff'd mem.*, 639 F.2d 778 (4th Cir. 1980); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983)("[N]either a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment.").

Janet Summerville offers no affidavit or other evidence that directly contradicts the sworn testimony submitted by Nikki Summerville regarding Mr. Summerville's intent.  Nor does she even clearly challenge the credibility of the affiants.  She objects (without reason) to Mr. Summerville's statements as

hearsay, *see supra* notes 2-3, but such objection rests on the credibility of the deceased, out-of-court declarant himself, not on the credibility of the witnesses to his declarations.

She does challenge (without reason) the competence of her opponent, Nikki Summerville, to testify about what the decedent did or said. *See id*. And by invoking Maryland's "Dead Man's Statute," she obliquely challenges the credibility of *her niece*. *See Farah v. Stout*, 112 Md. App. 106, 114 (1996)(recognizing that the "underlying purpose" of the "Dead Man's Statute" is to "prevent[] self-interested perjury"). The self-interest of Nikki Summerville is patent: if her claim triumphs, she collects roughly $100,000. Such a direct financial interest in the outcome of the case may itself be a fact sufficient to shake her credibility at trial. *See Playboy Enters., Inc. v. Pub. Serv. Comm'n*, 906 F.2d 25, 40 (1st Cir. 1990)(assuming that "in a proper case, an opponent of summary judgment can show a genuine issue of material fact without introducing evidence in direct contradiction to a fact presented by the movant, but by showing the existence of specific facts which would give a reasonable jury cause to disbelieve assertions supporting the movant's version").

The interests of Nikki Summerville's mother and her friend/ former babysitter, however, are less direct. Nor does Janet Summerville even obliquely challenge their credibility.

Accordingly, they must be believed.

To change beneficiary, the plan required an unmarried participant to sign the "Beneficiary Designation" subsection of "the form provided by the Plan Office," date it, and return it. Szymczak Aff., Ex. 1, MEBA Pension Trust Regulations § 7.09(a); Szymczak Aff. ¶ 5.  Nothing more.

Mr. Summerville obtained the requisite form.  N. Summerville Aff. ¶ 11.  On September 21, 2000, he signed and dated the "Form of Benefit" subsection of the section captioned "Participant's Election."[4]  Szymczak Aff., Ex. 3.  That subsection reads:

> I elect to waive the Qualified Preretirement Survivor Annuity for my Money Purchase Benefit.  I understand that with this election, my spouse will not be entitled to my Money Purchase Benefit in the event of my death prior to retirement.  (REQUIRES SPOUSAL CONSENT — SEE SECTION 3.)  (Note:  If you intend to designate a non-spouse Beneficiary, complete both parts of this Section.)

*Id.*  The other part of the section — the actual "Beneficiary Designation" subsection — Nikki Summerville herself completed, dated September 20, 2001, and signed on the line designated for the "Participant's Signature."  *Id.*; N. Summerville Aff. ¶ 12. That same day, the form was notarized.  Szymczak Aff., Ex. 3. The notarial clause, however, does not indicate whose signature the notary vouched for; the space to identify the person who

---

[4] Janet Summerville contests neither the authenticity of this signature nor its date.

7

appeared has been left blank. *Id.* The plan received the form on September 26, 2000. *Id.*

Under the terms of the plan, Mr. Summerville's signature served no purpose. He had no "Qualified Preretirement Survivor Annuity" to waive. Only a married participant could receive distribution of the MPB in such a form. *See* Szymczak Aff., Ex. 1, MEBA Pension Trust Regulations §§ 2A.15(a)-(c)(there called the "Qualified Joint and Survivor Annuity"), 7.07(c). On September 21, 2000, Mr. Summerville was not married, had not been married for more than ten years, and had no prospect of remarriage. P. Summerville Aff. ¶¶ 5-8, 10.

The notarization, though defective, likewise served no purpose. The plan required only that the consent of a participant's *spouse* (either to a waiver of the spousal survival benefit or to the designation of a non-spouse beneficiary) be notarized. Szymczak Aff., Ex. 1, MEBA Pension Trust Regulations §§ 2A.15(c), 7.07(c), 7.09(a). An unmarried participant did not need to have anything notarized.

Mr. Summerville simply signed the change-of-beneficiary form on the wrong line. As a matter of law, he substantially complied with the plan's change-of-beneficiary provisions. Nikki Summerville, therefore, is entitled to the funds.

## CONCLUSION

For the foregoing reasons, the Court will GRANT Nikki

Summerville's motion for summary judgment and enter judgment in her favor; Janet Summerville's cross-motion will be DENIED. A separate order follows.

                                                      /s/

                                       William D. Quarles, Jr.
                                       United States District Judge

Date:  August 13, 2003